**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

CARRIEANN KRACH,

                         Plaintiff,

        v.

CAROLYN W. COLVIN, Commissioner
of Social Security,

                        Defendant,

_____

No. 13-CV-1089
(GTS/CFH)

**APPEARANCES:**

LACHMAN & GORTON
Post Office Box 89
1500 East Main Street
Endicott, New York 13760-0089
Attorney for Plaintiff

Social Security Administration
Office of General Counsel
26 Federal Plaza, Room 3904
New York, New York 10278
Attorney for Defendant

**OF COUNSEL:**

PETER A. GORTON, ESQ.

ELIZABETH D. ROTHSTEIN, ESQ.
Special Assistant United States
Attorney

**CHRISTIAN F HUMMEL**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

    Plaintiff Carrieann Krach ("Krach") brings this action pursuant to 42 U.S.C. § 405(g) and

42 U.S.C. § 1383(c)(3) seeking review of a decision by the Commissioner of Social Security

("Commissioner") denying her application for benefits under the Social Security Act.  Krach

requests that the matter be remanded and reversed with benefits paid and/or remanded for

further proceedings.  Dkt. No. 12.  Commissioner cross-moves for a judgment on the

_____

     [1]  This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

pleadings.  Dkt. No. 13.  For the following reasons, it is recommended that the

Commissioner's decision be vacated and remanded.


# I.  Background

## A.  Facts

Krach was born on July 18, 1970, she was forty years old when she applied for disability

benefits.  Tr. at 124.[2]  Krach completed eleventh grade, received resource room help for

math and reading, and did not obtain a GED.  Tr. at 34, 63.  Krach has worked as a laborer

at a finishing company, a telemarketer, a hand-trucker at ManPower IBM, and a clerk at a

rental car agent.  Tr. at 35–41, 154.  Krach alleges disability from multiple impairments

including asthma, chronic obstructive pulmonary disease ("COPD"), hearing loss, ovarian

tumors, a ganglion cyst on her left wrist, obesity, depression, and anxiety.  Tr. at 42, 45,

152.


## B.  Procedural History

On June 10, 2011, Krach protectively filed an application for social security disability

insurance ("SSDI") and on July 29, 2011 protectively filed an application for social security

income ("SSI") benefits pursuant to Social Security Act, 42 U.S.C. § 401 et seq., claiming an

alleged onset date of February 4, 2010 for both applications.  Tr. at 15, 120–26.  Krach

requested a hearing before an administrative law judge ("ALJ"), John Ramos, which was

held on August 30, 2012.  Tr. at 29–62 (transcript of administrative hearing), 82–83.  In a

---

[2] "Tr." followed by a number refers to the pages of the administrative transcript filed
by the commissioner.  Dkt. No. 9.

decision dated September 24, 2012, the ALJ determined that Krach was not entitled to disability benefits.  Tr. at 12–28.  Krach's counsel filed a timely request for review of the decision with the Appeals Council.  Tr. at 10.  On August 13, 2013, the Appeals Council denied Krach's request for review.  Tr. at 6–9.  Krach then submitted additional information for review.  Tr. at 1–5.  On September 4, 2013, the Appeals Council considered this information and denied the request for review, thus making the ALJ's findings the final decision of the Commissioner.  Id.  This action followed.

## II.  Discussion

### A.  Standard of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision.  Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)).

"In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision."  Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 72 (N.D.N.Y. 2005) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)).  However, a court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir.

1998).  If the Commissioner's finding is supported by substantial evidence, it is conclusive.  42 U.S.C. § 405(g) (2006); <u>Halloran</u>, 362 F.3d at 31.


## B.  Determination of Disability[3]

"Every individual who is under a disability shall be entitled to a disability. . . benefit. . . ."  42 U.S.C. § 423(a)(1) (2004).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  <u>Id.</u> § 423(d)(1)(A).  A medically determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience.  <u>Id.</u> § 423(d)(2)(A).  Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques."  <u>Id.</u> § 423(d)(3).  Additionally, the severity of the impairment is "based [upon] objective medical facts, diagnoses or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience."  <u>Ventura v. Barnhart</u>, No. 04-CV-9018(NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing <u>Mongeur v. Heckler</u>, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based upon 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

_____

[3]  While the SSI program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3)(SSI) and Title II, 42 U.S.C. § 423(d) (Social Security Disability Insurance ("SSDI")), are identical, so that "decisions under these sections are cited interchangeably."  <u>Donato v. Sec 'y of Health and Human Servs.</u>, 721 F.2d 414, 418 n. 3 (2d Cir.1983) (citation omitted).

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he [or she] is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his [or her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a 'listed' impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work. Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467. The plaintiff bears the initial burden of proof to establish each of the first four steps. DeChirico v. Callahan, 134 F.3d 1177, 1179–80 (2d Cir. 1998) (citing Berry, 675 F.2d at 467). If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment. Id. at 1180 (citing Berry, 675 F.2d at 467).

### C.  ALJ Ramos's Findings

On August 30, 2012, declining representation, Krach testified at a hearing with her daughter as a supporting witness. Tr. at 29–62. Using the five-step disability sequential evaluation, the ALJ found that Krach:  (1) had not engaged in substantial gainful activity since February 4, 2010, the alleged onset date; (2) had severe medically determinable impairments of asthma and COPD; (3) did not have an impairment, alone or in combination, sufficient to meet the listed impairments in Appendix 1, Subpart P of Social Security

5

Regulation Part 404; (4) maintains the "residual functional capacity" ("RFC") to perform a full range of work at all exertional levels but . . . should avoid frequent exposure to concentrated environmental irritants"; and (5) is capable of performing past relevant work as an auto rental office clerk. Therefore, a determination of not disabled was made.

### D. Krach's Contentions

Krach contends that the ALJ erred in failing to find a severe mental impairment and consider the combined effect of all impairments. Krach next alleges that the ALJ's RFC determination was not supported by substantial evidence because he failed to consider the impact of her mental impairments. Krach also contends that the ALJ failed to fully develop the record. Krach contends that the ALJ erred in failing to introduce the testimony of a vocational expert. Krach finally argues that the Appeals Council did not properly evaluate the new evidence submitted to it for review of the ALJ's decision.

### 1. Severity of Impairments

As mentioned above, step two of the sequential evaluation process requires a determination of whether the claimant has a severe impairment that significantly limits the physical or mental ability to do basic work activities for a continuous period of time not less than one year. See subsection II(B) supra. Thus, a diagnosis alone is insufficient to establish a severe impairment, the plaintiff must show that the medically determinable impairments significantly limit the ability to engage in basic work activities. 20 C.F.R. § 404.1521(b) (2012). The ability to do basic work activities is defined as "the abilities and activities necessary to do most jobs." Id. Basic work activities which are relevant for

evaluating the severity of an impairment include:

> (1) Physical functions such as walking, standing, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

Id.; see also Pickering v. Chater, 951 F. Supp. 418, 424 (S.D.N.Y.1996); see also Social Security Ruling ("SSR") 85-28, 1985 WL 56856, at *3–4 (S.S.A. 1985).

In determining whether or not a mental impairment is severe, the ALJ must go through a four-step special technique set in 20 C.F.R. § 404.1520a(c). This requires the ALJ to assess four categories of functionality: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). The ALJ will then rate the degree of limitation in the first three areas as either none, mild, moderate, marked, or extreme. Id. § 404.1520a(c)(4). For the fourth category the ALJ will use a four point scale of: none; one or two; three; four or more. Id. The ALJ must document his analysis of the process in order to "reflect application of the technique and . . . must include a specific finding as to the degree of limitation in each of the functional areas." Kohler v. Astrue, 546 F.3d 260, 266 (2d Cir. 2008) (internal quotations omitted) (emphasis in original). If the ALJ finds the first three areas to be "none" or "mild," coupled with a finding of "none" in the last category as well as an absence of contrary evidence, the ALJ will generally conclude the impairment is not severe. 20 C.F.R. § 404.1520a(d)(1).

Krach first contends the ALJ improperly concluded that there was no objective medical

7

evidence showing she had received inpatient treatment from a practitioner who is a specialist in the field of psychiatry or psychology. Krach argues that the ALJ should have considered medical records showing her hospitalization after multiple suicide attempts, which in turn indicate that she did receive inpatient treatment. Such hospitalizations occurred in 2000, 2003, and 2004 and Krach's disability application was not filed until June, 2011. Tr. at 43, 122, 323. Krach's alleged onset date was February 4, 2010 and the ALJ decision is dated September 24, 2012. Therefore, the ALJ was not required to consider such evidence that pre-dated the time period he was required to consider under 20 C.F.R. § 404.1512(d). Brogan-Dawley v. Astrue, 484 F. App'x 632, 633 (2d Cir. 2012) (citation omitted) (concluding ALJ was not required to consider medical evidence that predated or postdated the relevant period for purposes of the severity determination); McManus v. Comm'r of Soc. Sec., 298 F. App'x 60, 61 (2d Cir. 2008); see O'Connell v. Colvin, No. 13-1636-CV, 2014 WL 929019, at *1 (2d Cir. 2014) (citing Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999)) ("In the absence of any obvious gaps or inconsistencies in the record for the relevant time period prior to [Krach's] date last insured, however, the ALJ was under no obligation to further develop the record."); see also 20 C.F.R. §§ 404.1512(d), 416.912(d) ("Before we make a determination that you are not disabled, we will develop your complete medical history . . . [which] mean[s] the records of your medical sources(s) covering at least the 12 months preceding the month in which you file your application."). For the same reasons, and contrary to Krach's contention, the ALJ was not required to consider the suicide attempts in his decompensation discussion.

Krach continues that the ALJ improperly based his decision on her failure to obtain inpatient treatment. Pl.'s Mem. (Dkt. No. 12) at 9 (citing cases). Courts have reasoned that

8

a claimant's lack of treatment for a mental illness does not indicate that his or her condition is not severe because "mental illness is notoriously under-reported and because it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." Day v. Astrue, No. 07 Civ. 157(RJD), 2008 WL 63285, at *5 n.7 (E.D.N.Y. Jan. 3, 2008) (internal quotation marks omitted) (citing inter alia Regnnitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1299–1300 (9th Cir. 1999)); see also Taylor v. Colvin, 12-CV-1326 (GTS/VEB), 2014 WL 78842, at *11 (N.D.N.Y. Feb. 24, 2014) (citing Day, 2008 WL 63285, at *5 n.7); Wright v. Barnhart, No. 3:05CV1487 (SRU)(WIG), 2006 WL 4049579, at *14 (D. Conn. Dec. 14, 2006) ("Several courts have questioned the relevance of a lack of medical treatment for a mental disorder as a basis for concluding that the mental impairment was non-severe") (collecting cases). However, the ALJ here identified the lack of objective evidence of inpatient treatment as one of several reasons for finding Krach's depression and anxiety to be non-severe. Tr. at 19. Thus, Krach's challenge to the ALJ's discussion on inpatient treatment is without merit.

Krach argues that the ALJ should have assessed her cognitive functioning because consultative examiner Dr. Long opined that Krach appeared to be functioning in the below-average intellectual level. Tr. at 324. However, Dr. Long did not find Krach's intellectual level to significantly limit her mental ability to do basic work activities and the record does not reflect the contrary. 20 C.F.R. § 404.1521(b). As such, the ALJ was not improper in declining to address her cognitive functioning in the severity determination. See subsection II(D)(3). Accordingly, Krach's claim concerning the severity determination based on her intellectual functioning is without merit.

Krach next contends that the ALJ improperly based his decision in part on her failure

9

regularly take prescribed medication. Pl.'s Mem. at 12 (citing cases). "[An] ALJ must . . . consider whether 'good reasons' exist for failing to follow the prescribed treatment, e.g. religious objections, lack of ability to pay, significant risks associated with treatment." Stockwell v. Astrue, No. 12-CV-00826 (MAD), 2013 WL 4508438, at *7 (N.D.N.Y. Aug. 23, 2013) (citing SSR 82-59; Grubb v. Apfel, No. 98 CIV. 9032(RPP), 2003 WL 23009266, at *4–8 (S.D.N.Y. Dec. 22, 2003)); see also Taylor, 2014 WL 788842, at *11 ("[G]iven Plaintiff's acknowledged psychiatric issues and borderline intellectual functioning . . . , it is possible (if not likely) that a lack of insight and judgment was a material factor in the failure to follow recommended treatment." (citations omitted)). "Absent such findings, a remand is required." Stockwell, 2013 WL 4508438, at *7 (citing Miller v. Shalala, 894 F. Supp. 73, 75 (N.D.N.Y. 1995); Knapp v. Apfel, 11 F. Supp. 2d 235, 238 (N.D.N.Y. 1998) ("a finding that the Commissioner has failed to specify the basis for his conclusions is [a] compelling cause for remand")).

Here, the ALJ cites to one medical entry dated April 27, 2012 showing Krach was not taking her medication regularly, which "indicates that her mental health problems are not as severe as alleged." Tr. at 19 (citing Tr. at 285). However, in the same entry, it was also noted that Krach was "confused about various effects of past SSRI's [(selective serotonin reuptake inhibitor)]." Seems Celexa and Lexipro might have worked but she thought one made her shake at one point yet it didn't before."[4] Tr. at 385. Krach was concerned with risks associated with her treatment. Stockwell, 2013 WL 4508438, at *7. Moreover, the same entry contains an Axis I and II diagnosis of recurrent major depression and an Axis V

_____

[4] Celexa are Lexapro are prescribed to treat depression. Information available at http://www.drugs.com/search.php?searchterm=celexa &is main search, http://www.drugs.com/search.php?searchterm=Lexapro (last visited Aug. 26, 2014).

GAF of 50 on June 8, 2011. Tr. at 386. Such factors should have been taken into consideration before discounting the severity of Krach's mental impairment due to the lack of regular medication being taken. Wright, 2006 WL 4049579, at *14.

Krach's next and primary contention is that the ALJ failed to give any weight to the opinion of Andrea Barbis ("Barbis"), a licensed clinical social worker, in determining the severity of her mental impairment. Social workers are not considered an "acceptable medical source" under the regulations. See 20 C.F.R. § 416.913(a). However, the ALJ should consider information from "other sources," such as social workers, which "may also help . . . to understand how [the claimant's] impairment affects [her] ability to work." Id. § 404.1513(e); see also SSR 06-03p, 2006 WL 2329939, at *2–3. While information from other sources cannot establish the existence of a medically determinable impairment, such information may be based on special knowledge of the individual and may provide insight into the severity of the impairment and how it affects the individual's ability to function. SSR 06-03p, 2006 WL 2329939, at *2–3. A social worker's reports and opinions may "play a vital role in the determination of the effects of [plaintiff's] impairment," especially if they were the "sole source that had a regular treatment relationship with the plaintiff." White v. Comm'r of Soc. Sec., 302 F. Supp. 2d 170, 176 (W.D.N.Y. 2004) (citations omitted).

The ALJ may conclude that the opinion of a licensed clinical social worker is not entitled to any weight; however, the ALJ must explain that decision. Saxon v. Astrue, 781 F. Supp. 2d 92, 104 (N.D.N.Y. 2011) (citing 20 C.F.R. § 404.1527(d); Canales v. Comm'r of Soc. Sec., 698 F. Supp. 2d 335, 344 (E.D.N.Y. 2010)). It follows that, "[b]ased on the particular facts of a case . . . it may be appropriate for an ALJ to give more weight to a non-acceptable medical source than a treating physician." Saxon, 781 F. Supp. 2d at 104 (citing inter alia

SSR 06-03p, 2006 WL 2329939, at *5).

In his decision, the ALJ acknowledged Krach's outpatient counseling with Barbis. Tr. at 19. However, that is the extent of the discussion of Barbis's treatment notes. Nowhere in his decision did the ALJ discuss Barbis's opinions. The ALJ went through the four step special technique to determine the severity of Krach's mental impairment. Tr. at 19–20. He designated a mild degree of limitation for the first three functional areas, and found no evidence of episodes of decompensation for the final functional area; therefore, he determined that Krach's depression and anxiety are not severe. Id. Barbis's opinion, as stated supra, can aid in determining the severity of Krach's impairment, yet the ALJ made no comments about Barbis's treatment besides noting that Krach had received some outpatient counseling from Barbis. Tr. at 19. The ALJ also failed to assign any weight to Barbis's opinion. Barbis's opinion is important because she has been the only source treating Krach regularly on an outpatient basis for her mental health. See Bergman v. Sullivan, No. 88-CV-513L, 1989 WL 280264, *3 (W.D.N.Y. Aug 7. 1989) (social worker's opinion is "a non-medical source whose opinion concerning the nature and degree of plaintiff's impairment is not only helpful, but critically important, since he is the only treating source."). Even though the ALJ may use his discretion to afford less or no weight to the opinion of an other source, the ALJ has a duty to address and discuss the opinion. Saxon, 781 F. Supp. 2d at 104. As such, on remand, the ALJ must address Barbis's opinion and provide an explanation of what weight, if any, he assigns to that opinion.

Krach contends that the ALJ, in his severity determination, improperly assigned significant weight to the opinions of non-treating consultative examiner Dr. Long and non-examining state agency psychological consultant Dr. Nobel. Pl.'s Mem. at 14–15. Dr. Long

12

examined Krach on October 13, 2011. Tr. at 323. The ALJ noted that Dr. Long did not find any Axis I or II diagnoses and determined that Krach had stress-related problems which did not significantly interfere with her ability to function regularly. Tr. at 19. As for Dr. Nobel, the ALJ noted that on October 25, 2011, Dr. Nobel reviewed the applicable records and found Krach did not have severe mental impairment. Tr. at 19. Dr. Nobel opined the records indicate that Krach has been on Celexa but doctor visits did not focus on depression. Tr. at 339. However, those records show that depression was a recurring issue and a focus for a visit on March 1, 2009. Tr. at 282–85.

Both Dr. Long and Dr. Nobel made their findings prior to the date of Barbis's treatment notes of record. As previously indicated, because the ALJ failed to discuss and give weight to Barbis's opinions, upon remand, the ALJ may have to reevaluate the weight assigned to the opinions of the consultative examiner and non-examining consultant. This is even more so for Dr. Nobel because as a general rule, "the written reports of medical advisors who have not personally examined the claimant 'deserve little weight in the overall evaluation of disability.'" Vargas v. Sullivan, 898 F.2d 293, 298 (2d Cir. 1990) (citations omitted).

Accordingly, with respect to the ALJ's severity determination, the Court recommends remanding the case for further proceedings consistent with this opinion.

## 2. RFC

Residual functional capacity is:

> "what an individual can still do despite his or her limitations.... Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that

13

> basis. A 'regular and continuing basis' means 8 hours a day,
> for 5 days a week, or an equivalent work schedule."

Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999) (quoting SSR 96–8p, 1996 WL 374184, at *2).  In making the RFC determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis.  20 C.F.R. § 404.1545(a).  The ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and plaintiff's subjective evidence of symptoms.  20 C.F.R. §§ 404.1545(b)–(e).  Pursuant to 20 C.F.R. § 404.1527(C)(1), every medical opinion, regardless of its source, must be evaluated.  The ALJ determined that Krach retained the RFC "to perform a full range of work at all exertional levels but . . . should avoid frequent exposure to concentrated environmental irritants."  Tr. at 20.  Krach contends that the ALJ erred by failing to discuss any of her mental limitations, both severe and non-severe, in the RFC determination.

In determining the RFC, the ALJ took no steps to consider Krach's mental health limitations, even if they were deemed non-severe.  20 C.F.R. §§ 404.1545(b)–(e).  Additionally, as discussed supra, because the ALJ improperly assessed the severity of Krach's impairments at step two, this error may have affected the rest of the steps in the ALJ's five-step analysis, including the RFC determination.  Tejada v. Comm'r of Soc. Sec., 11 Civ. 5645 (AJN)(GWG), 2013 WL 562888, at *14 (S.D.N.Y. Feb. 14, 2013) (noting that an erroneous finding at step two may distort the analysis for the rest of the decision because the "claimant's impairments must be considered in

14

combination at Steps Three, Four, and Five") (quoting <u>Schoofield v. Barnhart</u>, 220 F. Supp. 2d 512, 518 (D. Md. 2002)).  Such error compels the Court to remand this matter and further require the ALJ to reassess the RFC.[5]  Because the ALJ erred in evaluating the opinions from Krach's licensed clinical social worker, the Court cannot decide whether the ALJ's finding at step four of the sequential evaluation was supported by substantial evidence.  Remand is appropriate in instances, such as this, when the reviewing court is "unable to fathom the ALJ's rationale in relation to the evidence in the record" without "further findings or clearer explanation for the decision." <u>Williams v. Callahan</u>, 30 F. Supp. 2d 588, 594 (E.D.N.Y.1998) (citing <u>Pratts v. Chater</u>, 94 F.3d 34, 39 (2d Cir.1996)).

### 3.  Failure to Develop the Record

Krach next contends that the ALJ failed to fulfill his obligation to fully develop the record.  Krach was initially represented by an attorney, but at the time of the hearing, Krach was representing herself.  An ALJ generally has a duty to fully develop the record, but when the claimant is not represented by counsel, the ALJ is under a heightened duty to do so.  <u>Perez v. Chater</u>, 77 F.3d 41, 47 (2d Cir. 1996); <u>Echevarria v. Sec'y of Health and Human Serv.</u>, 685 F.2d 751, 755 (2d Cir. 1982) (internal citations omitted); <u>Lamay v. Comm'r of Soc. Sec.</u>, 562 F.3d 503, 509 (2d Cir. 2009);

---

[5]  Krach asserts additional allegations related to the ALJ's RFC assessment and contends that it is flawed due to the ALJ's failure to properly consider her wrist pain.  While Krach cursorily mentioned wrist pain in her severity and RFC discussions, she does not point to any evidence of record that supports her contentions. Furthermore, on October 13, 2011, consultative examiner Dr. Magurno opined that Krach had full range of motion of both her wrists.  Tr. at 321.

see also 20 C.F.R. § 404.1512(d) (describing Commissioner's duty to develop a "complete medical history for at least the [twelve] months preceding the month in which [claimant] file[s an] application . . . ."); 20 C.F.R. § 404.1512(e) (explaining how the Commissioner will attempt to retrieve the entire medical history from claimant's treating sources as opposed to always seeking consultative examinations). Accordingly, "[t]he ALJ's duty to supplement a claimant's record is triggered by ambiguous evidence, the ALJ's own finding that the record is inadequate or the ALJ's reliance on an expert's conclusion that the evidence is ambiguous." Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (citation omitted); see also Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999) ("[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim.") (citation omitted); Roat v. Barnhart, 717 F. Supp. 2d 241, 264 (N.D.N.Y. 2010) (holding that where a "medical record paints an incomplete picture of [claimant's] overall health during the relevant period, as it includes evidence of the problems, the ALJ had an affirmative duty to supplement the medical record, to the extent it was incomplete, before rejecting [claimant's] petition.") (internal quotation marks, altercations, and citation omitted).

Krach contends that there was evidence in the record concerning low cognitive functioning and that the ALJ did not sufficiently pursue the matter by seeking an additional consultative intelligence examination and contacting Krach's treating sources. A consultative examination is used to resolve "inconsistency in the evidence or when the evidence as a whole is insufficient to allow [the ALJ] to make a determination or decision" on the claim. 20 C.F.R. §§ 404.1519a(b), 416.919a(b). A

16

decision to obtain a consultative examination is made on an individual basis in accordance with the regulations. 20 C.F.R. § 404.1519. In some instances, it may be reversible error if the ALJ fails to order a consultative examination when it may be required for him to make an informed decision, but if the facts do not warrant or suggest a need for one, the ALJ is within his discretion to decide to not order a consultative examination. Falcon v. Apfel, 88 F. Supp. 2d 87, 91 (W.D.N.Y. 2000); Lefever v. Astrue, No. 07-CV-622 (NAM/DEP), 2010 WL 3909487, at *7 (N.D.N.Y. Sept. 30, 2010).

Here, Krach's contention that the ALJ should have sought an additional consultative examination and treating physicians opinion regarding her intellectual functioning and current depression has no merit. The ALJ twice requested medical source statements from Krach's primary care physicians. See Tr. at 184–230. In the Dr. Long's mental assessment, she noted that Krach had a potentially low cognitive function but did not diagnose any cognitive impairment. Id. The ALJ was aware of Krach's education level, need for resource room help during her secondary education for math and reading, struggles with writing, and her alleged difficulty in understanding through reading. Tr. at 34–35, 323. As such, the ALJ had sufficient information before him to make an informed decision about Krach's intellectual abilities and took reasonable steps to ensure the record was complete. Pellam v. Astrue, 508 F. App'x 87, 90 (2d Cir. 2013) (holding where consultative examiner's opinion largely supported ALJ's RFC assessment, and the record contained all treatment notes, ALJ had no further obligation to supplement the record by acquiring additional information). Consequently, there were no gaps or ambiguities in the record concerning Krach's

cognitive ability.  In addition, the facts do not suggest any reason for the ALJ to require an additional intelligence examination.  Therefore, he was under no obligation to obtain an additional intelligence examination or additional opinions from treating physicians. Accordingly, the Commissioner's decision on this issue should be affirmed.

Krach next contends that the ALJ did not fully develop the record concerning Krach's previous suicide attempts and hospitalizations.  As discussed above, the ALJ is under no obligation to consider evidence from a time before the relevant period. See subsection II(E) supra.  Since these suicide attempts and hospitalizations occurred in 2000, 2003, and 2004, and Krach filed for disability in 2011 with an alleged onset date of February 4, 2010, the ALJ was not obligated to consider such evidence. Therefore, the ALJ did not fail to fully develop the record on this issue.

Lastly, Krach claims that the ALJ failed to fully develop the record concerning her hearing loss.  In particular, Krach contends that the ALJ should have resolved the conflicting findings of the consultative examiner and her treating source by following up with her treating physician to obtain results of an audiological evaluation.  Tr. at 18, 242.  Krach's primary care physician, Dr. Yelamanchi, performed a test where he spoke in a low mumbling voice with his back turned away from Krach and found no hearing loss because she could still hear and respond appropriately.  Tr. at 242.  The ALJ used the treating physician's opinion to show that the plaintiff had failed to carry her burden of proving hearing loss.  See Bowen v. Yuckert, 482 U.S. 137, 146 (1987) (finding that the burden to prove disability and providing evidence to show particular impairments lies solely with the plaintiff).  Krach contends that because consultative examiner Dr. Magurno found a mild limitation for hearing and there was an audiology

18

evaluation ordered by Dr. Yelamanchi, the ALJ did not fully develop the record in order to make an informed decision concerning Krach's hearing abilities. Tr. at 321, 360, 363.

An ALJ should re-contact medical sources when the evidence from the treating physician or other medical sources is inadequate and as a result he cannot make a reasoned disability determination because additional information is needed to complete or clear the record. 20 C.F.R. §§ 404.1512(e), 416.912(e). Generally, the ALJ will place more weight on treating source's opinion who have had a longer treating relationship than those who have only treated the plaintiff once. 20 C.F.R. § 404.1527(c). Additionally, the ALJ gives more weight to an opinion that is more consistent with the record as a whole. 20 C.F.R. § 404.1527(c)(4). The ALJ reasoned according to these regulations by deciding that the opinion of the consultative examiner Dr. Magurno on hearing loss should be rejected because Dr. Magurno had only met with Krach once and his opinion was contrary to that of the treating physician, Dr. Yelamanchi. Tr. at 22. Therefore, the ALJ was within his discretion to reject Dr. Magurno's opinion.

Krach contends that the ALJ should have followed up on the audiology evaluation that was ordered but never completed. The ALJ was under no duty to ensure that Krach's primary care physician conduct this test. The test was ordered in July, 2011, and on two subsequent visits to the doctor's office, September 1, 2011 and November 3, 2011, the test had still not yet been conducted. Tr. at 360, 363. It is not the ALJ's duty to ensure that Krach's physicians perform further tests if the ALJ has sufficient medical evidence to determine whether Krach is disabled. Halverson v. Astrue, 600

19

F.3d 922, 933 (8th Cir. 2010) (quoting Barrett v. Shalala, 38 F.3d 1019, 1023 (8th Cir. 1994) (holding that "[t]he ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled.")). The ALJ is only under a duty to obtain pertinent, available medical records; since the audiology evaluation was not completed, the results were not available for the ALJ to obtain. Carter v. Chater, 73 F.3d 1019, 1022 (10th Cir. 1996) (citations omitted). Because the ALJ had the primary care physician's notes and evaluation, this was sufficient medical evidence to determine whether Krach had any hearing limitations. Therefore, the ALJ had fully developed the record concerning Krach's hearing limitations.

Accordingly, the Commissioner's decision on this issue should be affirmed.


## 4. Vocational Expert

Under the Social Security Act, the Commissioner bears the burden of proof for the final determination of disability. Pratt v. Chater, 94 F.3d 34, 38 (2d Cir. 1996). Generally speaking, if a claimant suffers only from exertional impairments, then the Commissioner may satisfy his burden by resorting to the applicable grids.[6] Pratt, 94 F.3d at 39. The grids "take[ ] into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience." Rosa, 168 F.3d

---

[6] An "exertional limitation" is a limitation or restriction imposed by impairments and related symptoms, such as pain, that affect only a claimant's ability to meet the strength demands of jobs (i.e. sitting, standing, walking, lifting, carrying, pushing, and pulling). 20 C.F.R. §§ 404.1569a(b), 416.969a(b); see also Rodriguez v. Apfel, 1998 WL 150981, at *10, n.12 (S.D.N.Y. 1998).

at 79.  Ordinarily, the ALJ need not consult a vocational expert, and may satisfy this burden "by resorting to the applicable medical vocational guidelines (the grids)."  Id. at 78 (citing 20 C.F.R. Pt. 404, Subpt. P, App.2).

The Second Circuit has held that "the mere existence of a nonexertional impairment does not automatically require the production of a vocational expert or preclude reliance" on the grids.[7]  Bapp v. Bowen, 802 F.2d 601, 605 (2d Cir. 1986).  The testimony of a vocational expert that jobs exist in the economy which claimant can obtain and perform is required only when "a claimant's nonexertional impairments significantly diminish his ability to work-over and above any incapacity caused solely from exertional limitations-so that he is unable to perform the full range of employment indicated by the medical vocational guidelines."  Id.  The use of the phrase "significantly diminish" means the "additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity."  Id. at 606.  Under these circumstances, to satisfy his burden at step five, the Commissioner must "introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform."  Rosa, 168 F.3d at 78 (quoting Bapp, 802 F.2d at 604).  Therefore, when considering nonexertional impairments, the

_____

[7]  A "nonexertional limitation" is a limitation or restriction imposed by impairments and related symptoms, such as pain, that affect only the claimant's ability to meet the demands of jobs other than the strength demands. 20 C.F.R. §§ 404.1569a(c), 416.969a(c).  Examples of nonexertional limitations are nervousness, inability to concentrate, difficulties with sight or vision, and an inability to tolerate dust or fumes. 20 C.F.R. §§ 404.1569a(a), (c)(i), (ii), (iv), (v), 416.969a(a), (c)(i), (ii), (iv), (v); see also Rodriguez, 1998 WL 150981, at *10, n. 12.

ALJ must first consider the question of whether the range of work the plaintiff could perform was so significantly diminished as to require the introduction of vocational testimony.  Samuels v. Barnhart, No. o1 Civ. 3661(MBM), 2003 WL 21108321, at *12 (S.D.N.Y. 2003) (holding that the regulations require an ALJ to consider the combined effect of a plaintiff's mental and physical limitations on his work capacity before using the grids).

The ALJ should elicit testimony from the expert by posing hypothetical questions. If a hypothetical question does not include all of a claimant's impairments, limitations and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability.  Melligan v. Chater, No. 94-CV-944S, 1996 WL 1015417, at *8 (W.D.N.Y. 1996).  The "[p]roper use of vocational testimony presupposes both an accurate assessment of the claimant's physical and vocational capabilities, and a consistent use of that profile by the vocational expert in determining which jobs the claimant may still perform."  Lugo v. Chater, 932 F. Supp. 497, 503 (S.D.N.Y. 1996).  Further, there must be "substantial evidence to support the assumption upon which the vocational expert based his opinion." Dumas v. Schweiker, 712 F.2d 1545, 1554 (2d Cir.1983).

As discussed supra, the ALJ failed to comply with the regulations and committed errors with respect to the medical opinion evidence.  Thus, the ALJ's findings at the fifth step of the sequential analysis are affected.  The Court has already determined that remand is necessary for further proceedings.  Accordingly, any additional analysis may require the testimony of a vocational expert regarding the effect that any nonexertional impairments may have on the plaintiff's ability to perform basic work

22

activities.  See Pronti v. Barnhart, 339 F. Supp. 2d 480, 487 (W.D.N.Y. 2004).

### 5.  New Evidence Introduced to Appeals Council

After the ALJ's decision, on November 28, 2012, Krach submitted approximately twenty pages of additional medical evidence for incorporation into the administrative record.  This additional evidence contains treatment notes dated September, 2012 concerning Krach's continuation of medication and counseling for treating depression and anxiety.  Tr. at 405–428.  At a later date, Krach submitted a mental questionnaire completed by Barbis for the period of February 2006 to July 12, 2013.  The questionnaire indicates that Krach has medium to marked limitations in various abilities in concentration and persistence, interaction with others, and adaptation to stress.  Tr. at 426–27.  Barbis opined that Krach "has trouble managing anxiety" and "[t]he phrase 'a molehill turns into a mountain' is apropos . . . once triggered, it is hard for [Krach] to use rational thought to calm down and be able to function."  Tr. at 427.  The Appeals Council considered all additional evidence and stated, "this information does not provide a basis for changing the Administrative Law Judge's decision."  Tr. at 2, 7.  Krach argues that this evidence should have been considered and given significant weight in determining whether she was disabled.

The Appeals Council shall consider "new and material" evidence so long as it is "relate[d] to the period on or before the ALJ's decision."  Perez v. Chater, 77 F.3d 41, 45 (2d Cir. 1996).  "Even if the Appeals Council denies review, evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record to be considered on judicial review."  Pearson v. Astrue, No. 10-CV-521 (MAD),

2012 WL 527675, at *11 (N.D.N.Y. Feb. 17, 2012) (citing <u>Perez</u>, 77 F.3d at 45).  "The role of the district court is to determine if the Appeals Council erred when it determined that the new evidence was insufficient to trigger review of the ALJ's decision." <u>Edwards v. Astrue</u>, No. 07-CV-898, 2010 WL 3701776, at *7, n.12 (N.D.N.Y. Sept. 16, 2010) (citation omitted).

> [i]f you submit evidence which does not relate to the period on or before the date of the . . . hearing decision, the Appeals Council will return the additional evidence to you with an explanation as to why it did not accept the additional evidence and will advise you of your right to file a new application.

20 C.F.R. § 404.976(b)(1); <u>see</u> <u>also</u> <u>DeChirico v. Callahan</u>, 134 F.3d 1177, 1184 (2d Cir. 1998) (advising plaintiff that she is "free to file a new application for benefits, pursuant to the relevant regulations, and to present new evidence of his disability at that time.").  The Second Circuit has also advised on the definitions and requirements for new evidence.  Supplementation of the record is permitted where evidence was "(1) 'new' and not merely cumulative of what is already in the record, . . . (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative . . ., [and (3) where there was] good cause for [claimant's] failure to present the evidence earlier."  <u>Lisa v. Sec'y Dep't of HHS</u>, 940 F.2d 40, 43 (2d Cir. 1991) (internal citations omitted).  "A diagnosis that post-dates an administrative hearing may be considered new evidence relating to the relevant time period only if it reveals that a claimant 'had an impairment substantially more severe than was previously diagnosed.'"  <u>Sears v. Colvin</u>, No. 12-CV-570 (MAD/ATB), 2013

24

WL 6506496, at *5 (N.D.N.Y. Dec. 12, 2013) (citing Florek v. Comm'r of Soc. Sec., No. 08-CV-0919, 2009 WL 3486643, *11 (N.D.N.Y. Oct. 21, 2009) (quoting Xu v. Barnhart, No. CV-04-3927, 2006 WL 559263, *7 (E.D.N.Y. Mar. 7, 2006)).

Here, Krach has shown good cause for not submitting the treatment notes and questionnaire during the administrative proceedings because they were either generated after or shortly before the ALJ's decision. Sears, 2013 WL 6506496, at *6. Such evidence is new for the same reasons. They are also not merely cumulative of evidence in the record. While the questionnaire encompasses a time period predating the relevant period, it also relates to time period extending back into at least February, 2009, or twelve months prior to the alleged onset date, which predates the ALJ's September, 2012 decision. The questionnaire contains opinions showing that Krach's mental impairments are more severe than previously diagnosed. As for the treatment notes, they cover a period of time between the ALJ hearing and decision and show ongoing outpatient treatment for Krach's depression and anxiety. In light of the recommendation supra to remand based on Barbis's opinions, the evidence is material and probative for there is a reasonable possibility the ALJ would have reached a different decision if he had received the new evidence.

The Appeals Council is unable to argue that the new evidence does not relate to the time period prior the ALJ's decision. The Appeals Council did provide any reason in the denials of review. Tr. at 2, 7. "Examinations and testing conducted after the ALJ's decision is rendered may still be relevant if they clarify a pre-hearing disability and/or diagnoses." Sears, 2013 WL 6506496, at *6 (citation omitted). According to the Second Circuit, "medical evidence generated after an ALJ's decision cannot [be]

deemed irrelevant solely because of timing." Newbury v. Astrue, 321 F. App'x 16, 18 n.2 (2d Cir. 2009) (citing Pollard v. Halter, 377 F.3d 183, 193 (2d Cir. 2004)). The refusal to consider evidence solely because it was created after the ALJ's decision is an error of law. Pollard v. Halter, 377 F.3d 183, 193 (2d Cir. 2004). As such, the Appeals Council erred when it determined that the new evidence surrounding Krach's mental impairments was insufficient to trigger review of the ALJ's decision and remand is appropriate. See Davidson v. Colvin, No .12-CV-315 (MAD/VEB), 2013 WL 5278670 (N.D.N.Y. Sept. 18, 2013).

### III. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that plaintiff's motion for judgment on the pleadings (Dkt. No. 12) be **GRANTED**; and further, that the Commissioner's decision be **VACATED** and the matter **REMANDED** to the agency for further consideration consistent with this recommendation.

Pursuant to 28 U.S.C. §636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989); 28 U.S.C §636(b)(1); FED R. CIV. P. 72, 6(a), 6(e).

Dated:   August 26, 2014
          Albany, New York

Christian F. Hummel
U.S. Magistrate Judge